UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 22-CR-60007-SMITH

UNITED STATES OF AMERICA

v.

ALEXANDER G. JOLLY,
KENOLD MILLION
and
PIETRO FELIPE SINCLAIR

        Defendants.
_____/

## FACTUAL PROFFER

The United States of America and Alexander G. Jolly ("Jolly"), Kenold Million ("Million"), and Pietro Felipe Sinclair ("Sinclair") agree that had this case gone to trial, the United States would have proven the following facts, among others, beyond a reasonable doubt:

On August 11, 2020, representatives of Owens & Minor ("O&M") reported an ongoing theft ring operating from their warehouse facility located at 14599 Northwest 8th Street, Sunrise, Florida ("Sunrise Warehouse"). O&M is a large medical supply business that provides the healthcare industry with products, including personal protective equipment (PPE). The Sunrise Warehouse includes small quantity sales internally and distributes larger quantities to customers externally. Large quantities of products are maintained in palletized form within the Sunrise Warehouse. The products at-issue are Halyard Nitrile Gloves, 3M N95 Masks, Medine Nitrile Gloves, and Medichoice Nitrile Gloves. These products are manufactured outside of Florida and transported to the Sunrise warehouse for distribution to O&M customers.

O&M contracted with Penske Logistics ("Penske"), a large trucking company, to provide transportation from the Sunrise Warehouse to customers throughout South Florida. Once the

theft scheme was discovered, O&M hired Integritet Global ("Integritet"), a private investigations firm. Penske also assisted with the investigation.

Million and Jolly were employed as Replenishment Teammates by O&M at the Sunrise warehouse. Their duties involved de-palletizing products for the smaller quantity sales area. There was no legitimate reason for Million or Jolly to place pallets of products in the large quantity distribution staging area ("staging area"). Sinclair was an employee of Penske and was assigned to transport larger quantities of products from the Sunrise warehouse to O&M customers.

The Integritet Investigators observed Million and Jolly on O&M internal surveillance cameras placing pallets in the staging area, from which Penske drivers load their trucks. Million and Jolly pre-selected certain pallets of products for theft and placed them in the area from which Sinclair loaded his Penske truck. Sinclair was subsequently followed to a residential property shared by Million and Jolly, located at 610 Long Island Avenue, Fort Lauderdale, Florida. The investigators watched Sinclair unload pallets from the truck into the carport of the property and conceal them with a large piece of cardboard and a couch. Sometime later in the evening an unknown individual arrived at the Long Island Avenue property with a U-Haul rental truck. The individual picked up the pallets and transported them to the Dollar City retail store located at 6969 Sunset Strip, Sunrise, Florida. An unknown individual then collected the pallets from the Dollar City store and transported them in a white van to 1400 Northwest 159th Street, Miami, Florida 33169.

The Penske truck assigned to Sinclair utilized a GPS tracking system that connects through a mobile device Sinclair is supposed to attach when utilizing the vehicle. On numerous occasions, during the known thefts, the GPS tracking system did not work. Sinclair complained about the truck's electrical system and attributed the GPS failure to that; however, Penske maintenance staff

examined the vehicle on multiple occasions and found no issues with the electrical system that would affect the GPS.

Once Owens & Minor began their internal theft investigation, Penske added a secondary GPS tracker unknown to Sinclair, which revealed that on some occasions when the primary GPS was not operating, the truck was driven to 610 Long Island Avenue, Fort Lauderdale, Florida, 33312. During surveillance, Sinclair was observed maneuvering around inside the Penske truck around the times the GPS system failed.

On August 18, 2020, O&M representatives confirmed that between 2:45 a.m. and 3:15 a.m., Jolly and Million were observed on O&M internal surveillance cameras improperly placing products in the staging area. Sinclair was subsequently seen loading these products onto his Penske truck, along with the products he was legitimately supposed to deliver. At 12:27 p.m., a Penske truck was observed by law enforcement officers arriving at the rear of the Dollar City store. Individuals resembling Jolly, Million, and Sinclair were witnessed unloading pallets from the truck with an employee of the Dollar City store. A white van is later witnessed arriving at the Dollar City store and an unknown individual loaded boxes into the van. Law enforcement officers subsequently followed the van to a warehouse in Miami-Dade County where the boxes were unloaded.

On August 20, 2020, O&M representatives observed Jolly and Million remove a pallet and cover it with corrugated carton sheets. Sinclair is subsequently observed putting a pallet similarly covered with corrugated carton sheets into the Penske truck. At approximately 12:00 p.m., law enforcement officers witnessed a U-Haul truck arrive at the rear entrance of the Dollar City store. Individuals resembling Jolly and Million were observed removing brown boxes with white labels. At approximately 12:50 p.m., the previously identified white van arrived at the Dollar City store

3

and boxes were loaded into the rear of the van. Law enforcement officers followed the van to two different warehouses in Miami-Dade County. At the second warehouse, law enforcement officers observed a pallet of boxes bearing the distinctive packaging of the Halyard brand, which is distributed exclusively by O&M.

On August 24, 2020, at 11:20 a.m., law enforcement officers observed a U-Haul truck back into the rear receiving area of the Dollar City store. Individuals resembling Jolly, Million, and Sinclair, and an employee of the Dollar City store, were observed moving around the U-Haul truck and the rear doorway of the store. Several minutes later law enforcement officers approached the rear of the U-Haul truck and observed the subjects moving boxes from the U-Haul truck into the rear of the Dollar City store. Officers observed numerous boxes placed on a pallet inside the Dollar City store. The boxes bore the same exterior markings as the Medline brand distributed by O&M. Officers also observed two additional full pallets bearing products with the same exterior markings further inside the store, and additional boxes with the same exterior markings in the rear of the U-Haul truck.

After law enforcement officers observed the Medline products, the subjects were detained, and the U-Haul truck and Dollar City store were secured. The three subjects were identified as Jolly, Million, and Sinclair. All three subsequently declined to make any post-*Miranda* statements.

During the protective sweep of the Dollar City store, law enforcement officers found five additional pallets of Medline brand gloves in the rear area of the business. The following medical product items were seized from the Dollar City store and the U-Haul truck:

    10 Boxes of 3M Health Care Respirators and Surgical Masks;
    60 Boxes of Medline Fit Guard Nitrile Gloves – small;

305 Boxes of Medline Fit Guard Nitrile Gloves – medium; and,
180 Boxes of Medline Fit Guard Nitrile Gloves – large.

Law enforcement agents went to U-Haul and obtained a copy of the contract for the U-Haul truck that day (August 24, 2020); it was in Million's name.

Through live and video surveillance, vehicle trackers, employment records, inventory counts, and recoveries, O&M determined the following product quantities were jointly and illegally taken by Jolly, Million and Sinclair:

| Description | Quantity |
| --- | --- |
| GLOVE EXAM NITRILE SG PF S | (900,000) |
| GLOVE EXAM NITRILE SG PF MEDIUM | (4,959,500) |
| GLOVE EXAM NITRILE SG PF L | (2,100,000) |
| MASK RESPIRATOR TYPE N95 MED | (23,100) |
| RESPIRATOR PARTICULATE W/O FACE SHD | (5,600) |
| MEDC GLOVE EXAM NITRILE XT MEDIUM | (588,000) |
| MEDC GLOVE EXAM NITRILE XT LARGE | (254,000) |
| GLOVE EXAM NITRILE XT MEDIUM | (2,597) |
| GLOVE EXAM NITRILE XT LARGE | (2,815) |
| FG2502 GLOVEEXAMNITRLPF3.5 MIL | (1,525,000) |
| FG2504 GLOVEEXAMNITRLPF3.5 MIL | (138,000) |
| FG2602 GLOVEEXAMNITRLPF3.6 MIL | (97,500) |
| FG2603 GLOVE EXAM NITRL PF3.6 MIL | (107,500) |
| MASK RESPIRATOR TYPE N95 SMALL | (83,360) |
| MASK RESPIRATOR TYPE N95 MED | (6,120) |

FG2501 GLOVEEXAMNITRLPF3.5 MIL          (150,000)

FG2503 GLOVE EXAM NITRL PF3.5 MILTX     (450,000)

O&M has determined that the total value of their loss, at replacement cost (as opposed to market value) is $704,090.00.

*All 3 defendants dispute the quantity of product and loss calculations as to each.*

P.5

AJ

[SPACE INTENTIONALLY LEFT BLANK]

6

The United States and the Defendants agree that these facts, which do not include all of the facts known to the government and the Defendant, are sufficient to prove the guilt of the Defendants as to the crime of Conspiracy to Commit Theft of Pre-Retail Medical Products, in violation of Title 18, United States Code, sections 670(a)(6), (b)(1), and (c)(2).

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

Date: 4/29/2022    By: *[signature]*
JAMES M. USTYNOSKI
ASSISANT UNITED STATES ATTORNEY

Date: 4/29/22    By: *[signature]*
MARCO ANTONIO QUESADA
COUNSEL FOR DEFENDANT

Date: 04-29-22    By: *[signature]*
ALEXANDER G. JOLLY
DEFENDANT

Date: 4/29/22    By: *[signature]*
SEBASTIAN COTRONE
COUNSEL FOR DEFENDANT

Date: 4/29/22    By: *[signature]*
KENOLD MILLION
DEFENDANT

Date: 4/29/22    By: *[signature]*
JASON WYATT KREISS
COUNSEL FOR DEFENDANT

Date: 4/29/22    By: *[signature]*
PIETRO FELIPE SINCLAIR
DEFENDANT